Good morning. May it please the Court, Paul Cowie for Swift Transportation. I'd like to reserve half of my time, please. Here, Swift seeks an order reversing the District Court's October 31, 2017, remand order. The only issue is whether the District Court erred in not First, Chavez v. J.P. Morgan came out this year. The Ninth Circuit issued a decision which said the amount in controversy includes, quote, encompasses all relief a court may grant. Before you embark on the merits, could you address the mootness question that we posed to you? Absolutely. So I think there's there's more than one response to that. First, we can look at the Rea, R-E-A, Michael Starr's case from Ninth Circuit in 2014. Rea says that post-removal developments do not defeat jurisdiction. And so if post-removal, a post-filing event cannot defeat jurisdiction, a second removal, being a post-filing development, cannot defeat the jurisdiction created by the post-removal. So opposing counsel says that because of the second removal, the case is currently in District Court. And the only relief you ask us is to direct the District Court to take jurisdiction over this action. So effectively, you have the relief you requested by filing the second removal order. That's opposing counsel's argument. Why is that wrong? Your Honor, because we are not asking you to tell the District Court to take jurisdiction. That's not the question. The question is whether the District Court erred in determining the jurisdictional amount and controversy at the time of the first removal. But that relief would just put the case back in District Court, which is where you are. That's the opposing counsel's point. As of October 31st, 2017, it would vacate the remand order, which arguably would also void any case that says that we could find. And you didn't cite one. That actually, because the proceedings in State Court can go on while there's an appeal of a remand order, which is what happened. And the general rule is that everything that happened in State Court is then binding on the federal court or accepted by the federal court subject to reconsideration. And so I could not find any, and you did not cite any case where the court said everything that happened in State Court while a remand order was on appeal is void. Your Honor, I don't believe there's a case which is binding on either side of that. The Fourth Circuit case that we cited, we cited for the discussion of creating this issue. The issue being, is, which I believe is unresolved. What do I do with, just a minute, what do I do with versus Equifax? Seems to me like Corvallo is pretty straight. Federal courts will treat everything that occurred in the state court as if it had taken place in the federal court and take the case up where the state court left it off. Your Honor, that would ignore the fact that the remand motion, which occurred in December of 2017, once that's vacated and is void, then the state court didn't actually have jurisdiction from that point onwards. Well, the state court has jurisdiction. I mean, there's no, we can't deprive a state court of jurisdiction. What the federal statute says is that no further proceedings will occur upon removal. But it's a different situation when there's an appeal of a remand order where things can go forward in state court. Your Honor, my response to that is that that is unresolved right now, that we don't have a pallet decision either way. But I'd also like to move on, because I don't want to get tied down in this one issue, because the effective relief we are seeking is that the first remand order was correct, sorry, the first removal was proper at the time that it was made in October. As we know, removal statutes have timing issues. The second removal is going to be, no doubt, disputed by... I realize here that because of a change in law, you get a second removal. Have they raised that argument to the district court? They have not yet raised the argument. Have they suggested that they're going to raise it? Yes, Your Honor. They've indicated that they will move to remand the second removal. And the challenge to the second removal could be different on timing grounds alone, as well as on whether a second removal is proper in these terms. Is that applicable in light of Chavez? They don't have to file their motion until next week, so we don't yet have their arguments, Your Honor. But all of these arguments and the challenges that are available to the second removal are not available to the first removal. The only issue with the first removal is, did the district court properly count the amount in controversy, which they did not. And now that we have Chavez and J.P. Morgan, it tells us that they should have included attorney's fees, should have included future damages, were easily over the $5 million, and jurisdiction was proper and correct as of October last year. And so if you deny this appeal as moot, a very possible scenario is that plaintiffs move to remand the second removal, the district court may remand the second removal on different grounds. So you're not saying that they would remove it on the REIA grounds, on the timeliness grounds? What grounds do you think that it would be remanded? Your Honor, they've already indicated that they believe a second removal would be improper. And what grounds? And so do you think that there are viable grounds to remand it? What's the strongest argument? Well, Your Honor, you're asking me to speculate on the other side's Okay, so you don't really know if there's a strong argument or not? No, we believe the second removal is proper. But the fact that the second removal is open to different challenges than the first removal is open to means that we are entitled to a decision on the first removal. Now, it's discretionary whether you granted this appeal. And unless and until this was If that was a scenario and we'd removed on day 29, and now we were arguing about, well, we've removed a second removal, and under Roth, that's appropriate, even though it's after the 30 days, that would be our argument. That first removal wouldn't be open to any dispute that it was within 30 days of the receipt of the complaint. And we have the same situation here, where, frankly, it's a slam dunk that we are properly in federal court, because now that Chavez and JP Morgan has clarified the split, we are above $5 million easily, however you do the math. Well, you are in federal court. I mean, your case is in federal court because you filed the second removal. Well, until the district court rules on plaintiff's remand motion of that second removal. Are you suggesting the district court, if it was presented in the second, that they would ignore these recent cases by allowing attorney's fees and all these other things in your computation of jurisdictional limitations? Well, as Judge Zakuda has pointed out, they are going to say that a second removal is improper, and they're almost certainly going to argue that timeliness. The first removal came within 30 days of receiving a mediation brief, which was a paper putting us on notice that the case had more than $5 million in controversy. So now, the second removal came after those 30 days from receiving the mediation brief. It's very conceivable that one argument is that the second removal came too late because it didn't come within 30 days of the mediation. But we don't know of any strong argument to that effect, that nothing was presented. You're speculating, basically, that there could be an argument somewhere out there, because Reyes seems to be directly on point. There's no doubt that Chavez clarified or changed the law. Your Honor, we agree with you, which is why we filed the second removal, because since this was a discretionary appeal, we prepared that motion, and lo and behold, we're ready to press the button on filing, and we got notice of the appeal. I'm really saying, what you're saying is, you need to send this back, because we're not sure this new removal is going to be upheld. But if it's not upheld for the same issue, if it's not upheld for the same issues which are presently before us, that would be a problem. But if there are other issues which are overriding of this particular issue, that you shouldn't have it here, but that nobody argued even in the first appeal, why is that a concern to me? Because jurisdiction is determined at the time of the removal. And so if jurisdiction was proper as of October 31st of 2017, and we belong in federal court, and we all know that we do, if you moot this appeal, and say, okay, let's just see what happens next, then you're ignoring that we probably... But we know what happens next. Sorry? What happens next is that the district court has to rule on your second removal order. I mean, we know exactly what happens next. Your Honor, exactly. But if they rule against us, we could be back on appeal which, one, impacts judicial efficiency, we're litigating in district court and then in the Ninth Circuit again, but also on different facts, on a different removal with different timings. And an appeal is not moot merely because it might become moot soon. And so this appeal isn't moot unless and until that remand order... And so I know you're arguing collateral consequences, but we're not allowed to rely on those unless there's something more than speculative. Your Honor, we aren't asking for you to rule that we should be in district court. We're asking you for a ruling that the first removal, when the district court considered it, should have included in the amount in controversy the future attorney's fees, the future damages. That's the ruling we're seeking because if you make that order, then the outcome is that we're in federal court. But we're not asking for an order that we should be in federal court. We're asking for an order reversing the remand order. It's a different request. We're not asking for the outcome. We're asking for the order that the first removal was proper or, more specifically, a reversal of that remand order. But if that doesn't do anything, then we're not giving you relief. In other words, if our ruling on that issue doesn't have any effect in the real world, we're required to say it's moot. And I think you just hit the nail on the head that it does give us effective relief because the effective relief is we're now not going to have to oppose a second remand motion about a second removal and appeal that if the order doesn't go in our way. And it would avoid all of that and create judicial efficiency in resolving the issue, which we all know we should be in federal court. But it worries me that the only thing that I have in front of me in this particular issue is the amount in controversy. If the amount in controversy is already decided, and it seems to me to be decided outside of me, and you're already in federal court, there's no way you're going to be thrown out of court for the amount in controversy. That's already decided. And all I'm going to decide if I help you is that the amount of controversy is what other courts above me have already said. And so I'm, again, trying to figure out what I do more. There is no way you're going to be thrown out of federal court on the amount in controversy. You're in federal court now. And there's no way you're going to be thrown out on the amount of controversy. And a possible outcome is that we will be thrown out on timeliness if you leave this to the second removal when we all know the first removal was proper and jurisdiction was created as of that time. I notice I have two minutes and would like to reserve some time. All right. Thank you. Good morning. Michael Strauss, appearing for Plaintiff Grant Fritch. May it please the Court. I agree this appeal presented a fascinating issue from my perspective as to whether future attorney's fees should be included in the amount in controversy. But we can't get there, at least not now, in this case, because it's moot. What about the collateral consequences that he's arguing that the potential that the second removal could be challenged on timeliness grounds? The statute doesn't allow a second removal under these circumstances. It's our case law. And so he's better situated, like I think he cites Connect Two and City of Colton, he's better situated with respect to his first removal than the second one. The issue of collateral consequences really shouldn't be an issue. There are procedures that are available to the defendant in this case, including filing a motion for reconsideration of the previous motion, the order, because the law has changed. At least that would be their argument. Did Chavez change the law? Right. And that was the basis for the second removal order under our case, RIA, which says you can bring it 30 days after the law changes. That's not in the statute, though, so presumably you could challenge the removal purely on timeliness grounds. It's possible, yes. Did they file a motion to reconsider based upon what the judge just said? Not yet, no. Has the 30 days passed? I don't believe there's a deadline in the Central District of California as to when they can file their motion for reconsideration. Well, what happens if I enter a remand order saying back to state court, that's when the time runs, because I've entered an order saying get out of the district court, go back to state court. And so my question is, if there's already been a remand order and that is gone, is the 30 days gone? Or is it like your counsel said, that they filed it within the 30-day period, but there's only a two-days grace in there somewhere? I do believe that the motion for reconsideration could be brought under FRCP 60, and I think there's a one-year statute of limitations on that. Okay. I do think there is relief that they can request in the district court. Believe me, I want to argue these issues. I think that I'm going to – I hope I'm maybe not as confident as Judge Smith, but I do believe that the mountain controversy issue is one that plaintiffs should win in this case. I would like to argue that if I can, but I do think the case is moved. I do think they have a relief that they can seek in the district court. They should seek that relief. I don't think time limit is going to be an issue. It might be with respect to their motion for – or our potential motion for remand. Well, so the argument is that there's – as in connect due in City of Colton, he's better situated with respect to the first removal because there, there was no question about timeliness. Whether he could have sought additional relief in district court doesn't really affect our mootness analysis. And so under connect due in those cases, if we dismiss this as moot, then he's thrown to the mercies of the current district court on the second removal order where there's additional arguments that could be raised. And I hear you saying that that's true, that he could be worse off on the second removal because by making a second removal, he loses timeliness arguments. I still think there's the availability of the motion for reconsideration. But we're looking – we're not looking at what relief he could seek. We're looking at whether the case is moot or not. Right. I think under the avoidable – or the collateral consequences doctrine, however, you have to look at what could happen in the district court. Well, would you be willing to enter into a stipulation with him saying in light of the change in law, we believe there was proper jurisdiction, the court was wrong? Would you be willing to do that? Which basis? Of the amount in controversy? Amount in controversy. I wouldn't stipulate to that. So you're saying that the change in law would not affect your claims one bit? They brought their motion – or sorry, they removed on two bases. One is that the change in the law in Chavez affected the ability to add to the amount in controversy the future attorney's fees. And they're saying that they should be able to seek future damages and that the damages themselves, exclusive of attorney's fees, have exceeded now $5 million. And so that being said – Disagree with that? They're saying that just based on the time that has passed, even if you don't look at attorney's fees, there's enough to get past the $5 million threshold. My position on that would be that if you look at the time the case was initially removed, what was the amount in controversy at that time? Which Chavez says is the amount at stake. I don't – yeah. I think Chavez is distinguishable, and I'd like to go into that if I can. Sure. Chavez – the plaintiff in Chavez sought future damages. It was undisputed. And in discovery, she said she was seeking nine years of front pay damages at $30,000 a year. So if you took a snapshot of what the case is worth at removal, when she's seeking nine years at $30,000, obviously that's going to put you over the $75,000 limit. Here, there's no such allegation. The case could settle the day after removal. What is the case worth at the time of removal? What would make my plaintiff's and the class whole at the time of removal? I think that should be the inquiry here, and I think that comports to Chavez. At the time of removal in Chavez, what would have made her whole was nine years of front pay. At least that's what she wanted. Here, there was no allegation that, hey, you know, this case could last 10 years, so we want 10 years of continuing damages in this case. That wasn't what was sought. We don't know. It's too speculative as to when a case is going to end. And so in that respect, I think Chavez is completely distinguishable. And I do think it's distinguishable with respect to the attorney's fees, too, because unlike asking for nine years of front pay damages, which is easy to compute, and she admitted that's what she was seeking, a case could settle the day after removal. That may be, but on the other hand, in my state, plaintiffs are barred from asking a lot of times for specific damages. Generally, we're entitled to damages of whatever. So when people were removed to our court, they can't say, well, my specific damages are this. Oftentimes, we get copies of demand letters attached to the things like that that are preceded to show that the plaintiff is really evaluating their case in excess of the jurisdictional amount, even though in their general pleadings it says they just want damages. So how do you get around that? What's a defendant left to do by trying to get jurisdiction in the federal court? How do you quantify that absent what they did in Chavez, where they've had specific years of damages? Well, when did that come about in Chavez? It came about in a deposition. How much were you making? How much were you seeking? She said, I want to keep working here for nine more years. So how do you do that in discovery here? It would be the same thing, asking questions, getting an expert involved. Well, then they have to argue, well, we just discovered this fact, and now we're removing as opposed to removing 30 days after being served with the complaint, right? So then you have another round of litigation over that. Well, did she really mean that? What did she say? That sort of thing. Or a lot of plaintiffs, when they're deposed, saying, I don't know. I left that up to my attorneys to decide what my damages are. In Chavez, it's different. But there are a lot of those cases, and that's what we see. So how do you get around that? I mean, what are they left to do? Well, what they did. Removed it? Well, no, what they did is they used the settlement demand. Well. And that's what you're seeing in all these cases now. And what was your settlement? I didn't see that part of it. Is that part of the record? The amounts that were asked for are actually in the appellant's opening brief, where they broke down the demand letter. It's on page three of their brief. It basically added, when you added all of the components of the demand, which included a rest period claim. Now, it's interesting in this case. Two cases were mediated at the same time, and there was a joint demand made. One of those cases had a rest period claim. One didn't. Ours didn't have a rest period claim. So when we made the joint demand and mediation, it included an amount for rest periods. So the district court ignored the rest period claim in coming up with the amount in controversy. But if you included it, which was the original demand, the demand was over $5.9 million. You take out the rest periods, and it's just below $5 million. So you'd stipulate that you're not asking for more than $5 million, because the opposing counsel's argument is that more time has passed, and in these categories additional unpaid wages, overtime wages, have accrued, which seems reasonable. And would you say no, that that's not going to be claimed, so that you would stipulate that it's under $5 million? I would stipulate that at the time of removal it was under $5 million. But that's the problem, because then when you go back to state court, they always accelerate. My recollection of some of these cases that it's improper for counsel to sort of stipulate you would not seek more. If you went back to state court, you would not seek more than that. And if there's some cases, you're not bound by that. But there has to be, at the time of removal, there has to be a reasonable amount that would exceed the statutory amount. And so, therefore, I think you're walking a very, very fine line. At the time of removal, we didn't suggest it was this. He suggests, yes, it was, based on some intervening cases. And you want to go back to state court and go play this ping-pong match about the first removal, second removal, back to state court, back here, when, in all likelihood, what you're asking for by way of damages at the time of the second removal, it exceeds the statutory amount, right? I don't think that it did. I think it was below the statutory amount. And I think the distinction as to whether we could stipulate is different here. In the case I think you're referring to is the standard insurance case, Supreme Court. It might have been the Ninth Circuit. I'm sorry if I misquote my courts there. But it basically said that an uncertified class could not stipulate that the amount of controversy was less than $5 million. Here we have a certified class, a case of certified in state court. I could make that stipulation. Perhaps we will make that stipulation. I'd have to evaluate the damages. Unfortunately, I'm not prepared to do that at this moment. I understand that. Okay, never mind. That's a different issue. I'm sorry. Now, with respect to this issue, and I think it's a really interesting issue as to whether to use the 25% benchmark to add it on top of the underlying amounts to come up with an estimate of attorney's fees. I think from my briefs you saw that it's not any less speculative than trying to figure out what attorney's fees are, like pulling a number out of a hat. The 25% benchmark is used when you have a common fund settlement. A $6 million common fund, attorney's fees approved at 25%. That would be the benchmark in the Ninth Circuit. We say that the defendant has to prove the amount by a preponderance of the evidence. Presumably, if it went back to district court, there would be an obligation on the defendant to show what the attorney's fees were likely to be by the preponderance. We don't really know what that would mean, but why wouldn't that be sufficient? If the defendant couldn't show that, that that was a reasonable amount at stake, then the district court would not include them. Well, again, I think there's three points to my response. First, the 25% benchmark is something that comes out of a common fund. Right, I'm not talking about the 25% benchmark. I'm not aware of a basis for saying that there is a fixed amount that reasonable attorney's fees will always be. But putting that aside, I don't see why the defendant would be foreclosed from proving by a preponderance of evidence what reasonable attorney's fees would be in this case, what's reasonably at stake. I've had cases last a year. I've had cases last 10 years. Right, but it would be up to the district court to decide that, right? You're saying, well, it could be very speculative. I mean, that's the argument you would make to the district court, and the district court would hear the arguments on both sides and decide. So how would I do it if I were defense counsel? I would take my own attorney's fees and figure out how am I going to staff this case? What do I anticipate? Oftentimes, defense counsel has to prepare a report for insurance counsel or for the insurance company to say, I think we're going to incur this much in attorney's fees in this case to allow the insurance company to evaluate what a case is actually worth. I think the same thing should be done here. Defense counsel should present, assuming future attorney's fees were to be included. Assuming? I don't think they can, with respect. I don't think they can, Mr. Chavez. I don't think Chavez says that. But assuming that future attorney's fees can be included, or even if we're looking at past attorney's fees, I think what they have to do is look at their own bills, say this is how we staffed it, this is how much we've incurred on the defense side, and it's reasonable to assume that the plaintiff, who has done this much work in comparison to us, has fees that are in the ballpark of ours. Otherwise, they can't look at my bills. I don't know how they're going to determine that. I think substantial evidence to meet their burden, I think that all they'd have to do is establish what would be reasonable, and reasonableness would be what they've incurred or what they think they will incur in the course of the case. It would be fascinating, I think, to see a defense counsel actually present that information to the court, which could then be used for future fee applications by a plaintiff's counsel. It's a vicious cycle, I guess. True, but don't you have to project that out into, if the case ultimately goes to trial, the end result? You can't say, well, if it settles here, it would be only 20% of that or 10%. You have to figure how much it's going to cost when you go to your client and say, here's what it's going to cost you, by the way, if we go all the way through trial. And isn't that one of the criticisms in the class action suits where they say the attorneys get all the money and the actual plaintiffs get certificates of movie stubs and this and that and the other thing to settle the case? Hopefully not in my case. Well, I know I'm just using an exaggerated example, of course, as you might expect. We're both smiling. So the point is that's the issue. And so the fees are exorbitant in these cases. And how, I mean, maybe they're worth it, maybe they're not. Can I briefly address that? Yeah, sure. Okay. When you look at a fee award, and I'm sure Your Honor has done a few recently in these types of cases, you'll notice that most of the time when there's a sizable settlement, the question is how much of a multiplier to put on the fees that have been incurred in order to get close to that 25% benchmark. And those multipliers range from 2 to 8. I've had multipliers of 8 in some of my cases, where I got the 25% or maybe it was 20% with an 8 times multiplier on my actual fees. I think what you'll see is that the actual fees that are expended are going to be, in most cases, far less than the 25% benchmark in cases that are worth more than $5 million. Thank you. Thank you. We have some time left for rebuttal. Thank you. So, Chavez, first of all, says that it encompasses all relief the court may grant. And you just heard counsel say that the load star he's got is as much as 8 times. The relief that may be granted by the court includes all attorney's fees, including the load star amount or percentage of the fund. And, in fact, empirical data has shown, and we have this quote in our briefs, that whether you use the load star amount or whether you use the percentage of the fund amount, you typically end up with a third of the amount in controversy being how much the attorney's fees are. However you do the math, we easily get past $5 million. In terms of the mootness, I come back to if there's any effective relief you can grant us, the case is not moot. My opponent has a heavy burden to show that it is, in fact, moot. You've heard him say that he's going to challenge the remand orders or our second removal in various different ways. And the effective relief is to hold that the first removal was proper and to vacate that remand order. And then we're done. And that's going to save judicial efficiency both at the district court level and in the Ninth Circuit. In terms of the motion for reconsideration, of course, once we were out of district court and we were back in state court, we lost the ability to file a motion for reconsideration with the federal court. And, indeed, at the time that Chavez came out, we'd been out of federal court for several months. Is there a statute or some reason why you're precluded from filing a motion for reconsideration? Your Honor, I would have to check the local rules in terms of the timing of when we could file that. They usually say within a reasonable amount of time. And we haven't even had 30 days run from when we filed our second removal. And really I'd just conclude with the standard here is what is at stake. What is at stake in the litigation, not what might happen tomorrow if we settle. And the wages are a very keen example of this. If we fire an employee and the very next day they file their lawsuit, then arguably at that time they may have one day's lost wages. And what plaintiff's counsel argues here is that as long as I don't say I'm claiming nine years' damages, then you can't remove. And we know the standard fire case says that you can't plead around removal. Thank you. Okay, we thank both sides for the argument. And the case of Grant Rich v. Swift Transportation Company is submitted. And we are adjourned for this session. All rise.
judges: Ikuta, N.R. Smith, McNamee